UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| **DOUGLAS A. WILSON, Admn. of the Estate of BRIANNA TAYLOR WILSON, aka BRIANNA T. WILSON, deceased** <br> 1868 Village Lane <br> Piqua, OH 45356 <br><br>       Plaintiff <br><br> v. <br><br> **CITY OF SIDNEY, OHIO** <br> 201 West Poplar Street <br> Sidney, OH 45365 <br><br> and <br><br> **WILLIAM BALLING, individually and in his official capacity as the Chief of the Sidney Police Department** <br> c/o Sidney Police Department <br> 234 West Court Street <br> Sidney, OH 45365 <br><br> and <br><br> **OFFICER JAMES O. JENNINGS, individually and in his official capacity as a Sidney Police Department Police Officer** <br> c/o Sidney Police Department <br> 234 West Court Street <br> Sidney, OH 45365 <br><br> and | CASE NO.: <br><br> JUDGE: <br><br><br><br><br><br><br> **COMPLAINT** <br><br> **JURY DEMAND ENDORSED HEREON** |

1

**OFFICER SCOTT WHITE,**
**individually and in his official capacity as a**
**Sidney Police Department Police Officer**
c/o Sidney Police Department
234 West Court Street
Sidney, OH 45365

and

**JOHN and/or JANE DOE(s) 1 – 10,**
**individually and in their official capacities**
**as agents of the City of Sidney, whose**
**identities are not known at this time but**
**were actors, participants, and parties who**
**have acted wrongfully toward Brianna**
**Taylor Wilson, aka Brianna T. Wilson, but**
**shall be ascertained during discovery**
c/o City of Sidney, Ohio
201 West Poplar Street
Sidney, OH 45365

and

**RILEY D. BARGER**
535 S. Wayne Street
Piqua, OH 45356

　　　　**Defendants.**

　　　　Now comes the Plaintiff, by and through counsel, and as and for his Complaint does hereby

state as follows:

<u>**PRELIMINARY STATEMENT**</u>

　　　　1.　　　　This action arises out of a failure by the Officers of the City of Sidney Police

Department, and the City of Sidney Police Department, by and through the City of Sidney, to

protect Brianna Wilson, from physical and emotional harm, resulting in her needless, tragic death

as a proximate result of the wrongful acts and omissions of the Defendants, and others to be

ascertained through discovery, as set forth herein. The suit contains causes of action for:

a. Survival action under R.C. 2305.01 including Brianna's incomprehensible pain, suffering, and mental anguish.

b. Wrongful death under R.C. 2125.01, et seq.

c. Violations of sections of the Ohio Revised Code, Ohio Administrative Code, and policies, procedures and other rules within the City of Sidney and City of Sidney Police Department.

d. Violations of criminal statutes that provide for civil recovery under R.C. 2307.60.

e. Violations of Brianna's rights under the Fourth Amendment and 42 U.S.C. § 1983.

f. Reckless, wanton, willful, malicious, bad faith actions of individuals in their individual capacities as employees of City of Sidney and Sidney Police Department.

g. Reasonable attorney's fees under 42 U.S.C. § 1988.

## **PARTIES**

2.      Douglas Wilson (hereinafter referred to as "Plaintiff") is the Administrator of the Estate of Brianna Taylor Wilson, aka Brianna T. Wilson, having been appointed same by the Shelby County Probate Court in Case No. 21EST240 on January 17, 2023.  Plaintiff brings this suit in his capacity as Administrator of the Estate and for the beneficially entitled next of kin of Brianna Taylor Wilson, aka Brianna T. Wilson (hereinafter referred to as "next of kin").  At the time of her death, Decedent Brianna Taylor Wilson, aka Brianna T. Wilson, resided at 630 Fourth Ave., City of Sidney, County of Shelby, Ohio 45365.

3.      Defendant City of Sidney, Ohio (hereinafter "City" or "the City"), located in Shelby County, Ohio, is a body politic and corporate and a unit of local government organized under the laws of the State of Ohio and is responsible within its boundaries for the exercise of all powers vested in and the performance of all duties specifically conferred under Ohio law, including but

not limited to the provision of a law enforcement agency within its geographical boundaries, namely, the Sidney Police Department (hereinafter referred to as "SPD"). Defendant City is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. Defendant City is also subject to suit as set forth in R.C. 715.01.

4.    Defendant William Balling, former Chief of the Sidney Police Department, is a "person" under 42 U.S.C. § 1983 and was at all times relevant to this action employed by SPD as chief of police and was responsible for supervising activities and subsequently ratified the conduct and activities of Defendant Officer James O. Jennings and Defendant Officer Scott White, and any other SPD officer, and acting under color of law. Defendant Balling is sued in his individual and official capacities. Defendant Balling acted intentionally, wantonly, willfully, recklessly, and/or not in good faith, in disregard to his duties under the statutory and common law, proximately resulting in the injuries and death of Plaintiff's Decedent, Brianna Wilson.

5.    Defendant Officer James O. Jennings was, at all times relevant herein, a police officer for SPD and, upon information and belief, was, together or independently of Defendant Balling, responsible for management of a call for domestic violence on or about February 5, 2021. Defendant Jennings is a "person" under 42 U.S.C. § 1983 and was at all times relevant to this action employed by SPD as a police officer and acting under color of law. Defendant Jennings is sued in his individual and official capacities. Defendant Jennings acted intentionally, wantonly, willfully, recklessly, and/or not in good faith in disregard of his duties under the statutory and common law, proximately resulting in the injuries and death of Plaintiff's Decedent, Brianna Wilson.

6.    Defendant Jennings, at all times relevant herein, had statutory and common law duties to record abuse and neglect, screen, investigate reported domestic violence and abuse,

conduct and complete safety assessments, and act to remove violent threats, and in particular the threats against Decedent Brianna Wilson from the danger posed by Defendant Riley D. Barger. Defendant Jennings acted intentionally, wantonly, willfully, recklessly, and/or in bad faith, in disregard of his duties under the statutory and common law, proximately resulting in the injuries and death of Plaintiff's Decedent, Brianna Wilson.

7.     Defendant Officer Scott White was, at all times relevant herein, a police officer for SPD and, upon information and belief, was, together or independently of Defendant Balling, responsible for management of a call for domestic violence on or about February 5, 2021. Defendant White is a "person" under 42 U.S.C. § 1983 and was at all times relevant to this action employed by SPD as a police officer and acting under color of law.  Defendant White is sued in his individual and official capacities. Defendant White acted intentionally, wantonly, willfully, recklessly, and/or not in good faith in disregard of his duties under the statutory and common law, proximately resulting in the injuries and death of Plaintiff's Decedent, Brianna Wilson.

8.     Defendant White, at all times relevant herein, had statutory and common law duties to record abuse and neglect, screen, investigate reported domestic violence and abuse, conduct and complete safety assessments, and act to remove violent threats, and in particular the threats against Decedent Brianna Wilson from the danger posed by Defendant Riley D. Barger.  Defendant White acted intentionally, wantonly, willfully, recklessly, and/or in bad faith, in disregard of his duties under the statutory and common law, proximately resulting in the injuries and death of Plaintiff's Decedent, Brianna Wilson.

9.     Defendants John and/or Jane Doe(s) 1-10 are those persons who are individuals and/or agents of Defendant City, including supervisors, managers, case workers, screeners, or other persons whose identities are not known at this time but shall be ascertained during discovery.

Defendants John and/or Jane Doe(s) 1-10 were persons employed by SPD and/or were responsible for supervising the activities of SPD, including Defendants Jennings and White, are "persons" under 42 U.S.C. § 1983, and who were acting under color of law. They are each sued in their individual and official capacities. Said persons acted intentionally, wantonly, willfully, recklessly, maliciously, and and/or not in good faith in disregard to their duties under the statutory and common law, proximately resulting in the injuries and death of Plaintiff's Decedent, Brianna Wilson.

10.     Pursuant to Ohio Civ. R. 19, Plaintiff is unaware of the names of any other necessary parties to this action and, therefore, are unable to join such parties at this time, other than those disclosed to the public and included herein.  Plaintiff will immediately conduct discovery pursuant to Ohio Civ. R. 37(D) and R.C. 2317.48 in order to ascertain the identity of any such potentially adverse parties necessary, or like and similar defendants, and to ascertain any other causes of action against the named Defendants or anyone yet to be made a necessary or indispensable party. The discovery of all reports, records, calls, information, and other matters in the DIBRS system with regard to the incident on February 5, 2021, will be sought.

11.     Defendant Riley D. Barger is an adult individual residing at 535 S. Wayne Street, Piqua, Ohio 45356.  Defendant Barger is sued in his individual capacity.  Defendant Barger acted intentionally, wantonly, willfully, recklessly, negligently, and/or not in good faith in disregard of his duties under the statutory and common law, proximately resulting in the injuries and death of Plaintiff's Decedent, Brianna Wilson.

**JURISDICTION**

12.     Subject matter jurisdiction of this Court is premised upon 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1367 (supplemental jurisdiction), and 28 § U.S.C. 1343(a)(3) (civil rights

to redress the deprivation, under color of state law, statute, ordinance, regulation, custom, or usage of any right, privilege, or immunity secured by the Constitution of the United States.

<b><u>VENUE</u></b>

13.     Venue is proper in the Southern District of Ohio, Western Division at Dayton, where the violations took place pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff's claims for relief and requests for remedial action, arose from injuries and wrongs that occurred in Shelby County, Ohio.

<b><u>HISTORICAL AND FACTUAL BACKGROUND</u></b>

14.     Plaintiff incorporates all previous paragraphs as if fully rewritten herein.

15.     From July 1, 2020, through June 30, 2021, over 131 domestic violence related fatalities were reported in Ohio. Of that number, 63 victims were female. "In several of the fatal cases, a violent [domestic violence] episode immediately or recently preceded the event, was reported, and offered an opportunity for a stronger and more timely criminal justice response." Tragically, these numbers included Brianna Wilson. *See ODVN Fatality Report 2021/2022 attached hereto as Exhibit 1.*

<b><u>Sidney Police Department Policy and Procedures</u></b>

16.     The law that creates the system of protection, enforcement, prosecution, and civil remedies are found in the Ohio Revised Code, and particularly R.C. 2919.25 and other revised code sections.

17.     SPD has promulgated a domestic violence policy which stresses, consistent with R.C. 2935.032, "[t]he Sidney Police Department's response to incidents of domestic violence and violations of related court orders shall stress enforcement of the law to protect the victim and shall communicate the philosophy that domestic violence is criminal behavior." *See Sidney PD Policy Manual, Policy 311 attached hereto as Exhibit 2.*

18.    At all relevant times, all SPD and Defendant City employees were required to be apprised of the United States Constitution and required at all times to uphold and obey the laws of the State of Ohio and also comply with SPD's Sidney PD Policy Manual (hereinafter "Policy Manual"). At all relevant times, SPD officers are required to be familiar with the Policy Manual and must adhere to its directives.

19.    According to Section 311.4 of Policy 311 of the Policy Manual, the following guidelines should be followed by officers when investigating domestic violence cases:

a.  Calls of reported, threatened, imminent or ongoing domestic violence and the violation of any court order are of extreme importance and should be considered among the highest response priorities. This includes incomplete 9-1-1 calls.

b.  When practicable, officers should obtain and document statements from the victim, the suspect and any witnesses, including children, in or around the household or location.

c.  When practicable and legally permitted, video or audio record all significant statements and observations.

d.  All injuries should be photographed when possible, regardless of severity, taking care to preserve the victim's personal privacy. Where practicable, photographs should be taken by a person of the same sex. Victims whose injuries are not visible at the time of the incident should be asked to return to the police department if they become visible. At that time any officer on duty can take a photograph and due a supplemental report to the original call.

e.  Officers should request that the victim complete and sign an authorization for release of medical records related to the incident when applicable.

f.  If a suspect is no longer at the scene, officers should make reasonable efforts to locate the suspect to further the investigation, provide the suspect with an opportunity to make a statement and make an arrest or seek an arrest warrant if appropriate.

g.  Seize any firearms or other dangerous weapons in the home, if appropriate and legally permitted, for safekeeping or as evidence.

h.  When completing an incident or arrest report for violation of a court order, officers should include specific information that establishes that the offender has been served, including the date the offender was served, the name of the agency that served the order and the provision of the order that the subject is alleged to have violated. When reasonably available, the arresting officer should attach a copy of the order to the incident or arrest report.

i.  Officers should take appropriate enforcement action when there is probable cause to believe an offense has occurred. Factors that should not be used as sole justification for declining to take enforcement action include:

    i.  Whether the suspect lives on the premises with the victim.

    ii.  Claims by the suspect that the victim provoked or perpetuated the violence.

    iii.  The potential financial or child custody consequences of arrest.

    iv.  The physical or emotional state of either party.

    v.  Use of drugs or alcohol by either party.

    vi.  Denial that the abuse occurred where evidence indicates otherwise.

    vii.  A request by the victim not to arrest the suspect.

    viii.  Location of the incident (public/private).

ix.     Speculation that the complainant may not follow through with the prosecution.

x.      Actual or perceived characteristics such as race, ethnicity, national origin, religion, sex, sexual orientation, gender identity or expression, economical status, age, cultural group, disability, or marital status of the victim or suspect.

xi.     The social status, community status, or professional position of the victim or suspect.

20.     Section 311.4.2 of the Policy Manual instructs officers what to do if <u>no</u> arrest is made.  It instructs the following:

(a) Advise the parties of any options, including but not limited to:

(1) Voluntary separation of the parties.

(2) Appropriate resource referrals (e.g., counselors, friends, relatives, shelter homes, victim witness unit).

(b) <u>Document the resolution in a report</u>.[1]

21.     Section 311.9.1(a) of the Policy Manual provides, in relevant part, that in determining whether to make an arrest, officers investigating a domestic violence report should consider:

22.     An officer who has reasonable grounds to believe that a person has committed the offense of domestic violence or a protection order should arrest and detain the person (R.C.

---

[1] Emphasis added.

10

2935.03(B)(1); R.C. 2935.032). <u>Any decision not to arrest when there is reasonable cause to do so requires supervisor approval</u>.[2]

23.     Section 311.9.2(b) of the Policy Manual provides, in relevant part, that when documenting alleged domestic violence, "[O]fficers who investigate an allegation of domestic violence or violation of a court order, but do not make an arrest or seek a warrant, <u>shall</u> clearly articulate in the appropriate report the reasons for not arresting or pursuing a warrant (R.C. 2935.03(B)(3); R.C. 2935.032)."[3]

24.     Additionally, Sidney PD Policy Manual § 311.9.2(d) provides what officers investigating an offense of domestic violence or the offense of violating a protection order <u>shall include</u> in a written report (R.C. 2935.032). Such reports require the following:

(1) The fact that separate interviews with the victim and the alleged offender were conducted in separate locations, and identify the locations.

(2) Any statements from the victim that indicate the frequency and severity of any prior incidents of physical abuse of the victim by the alleged offender, the number of times the victim has called peace officers for assistance, and the disposition of those calls, if known.

(3) Observations of the victim and the alleged offender.

(4) Any visible injuries on the victim or the alleged offender.

(5) Any weapons at the scene, and the actions of the alleged offender.

(6) Any statements made by the victim or witnesses.

(7) Any other significant facts or circumstances.[4]

---

[2] Emphasis added.
[3] Emphasis added.
[4] Emphasis added.

25.    Furthermore, Section 311.9.2(f) of the Policy Manual requires that the Officer Supervisor <u>shall ensure</u> domestic violence reporting is made to the Ohio Attorney General in compliance with R.C. 3113.32.[5]

26.    Finally, Section 311.5 of the Policy Manual provides guidance to officers who are investigating alleged domestic violence.  In relevant part, Section 311.5 provides: "<u>Victims may be traumatized or confused</u>.  Officers <u>should</u>:

(a)  Recognize that a victim's behavior and actions may be affected.

(b)  Provide the victim with the department's domestic violence information handout, <u>even if the incident may not rise to the level of a crime</u>.

\* \* \*

(f)  Ask the victim whether he/she has a safe place to stay.  Assist in arranging to transport the victim to an alternate shelter if the victim expresses a concern for his/her safety or of the officer determines that a need exists.

\* \* \*

(h)  Seek or assist the victim in obtaining an emergency order if appropriate.[6]

27.    SPD has also promulgated a civil dispute policy which stresses, "members of this department will assist at the scene of civil disputes with the primary goal of safeguarding persons and property, preventing criminal activity and maintaining the peace." *See Sidney PD Policy Manual, Policy 430 attached hereto as Exhibit 3.*

28.    At all relevant times, all SPD, Defendant City employees, Defendant Balling, Defendant Jennings, and Defendant White were required to be apprised of the United States Constitution and required at all times to uphold and obey the laws of the State of Ohio and also

---

[5] Emphasis added.
[6] Emphasis added.

comply with SPD's Policy Manual. At all relevant times, SPD officers are required to be familiar with the Policy Manual and must adhere to its directives.

29.     According to Section 430.3 of Sidney PD Policy Manual, Policy 430, SPD members and officers "should give considerations to the following when handling civil disputes:

> (a) <u>Civil disputes tend to be confrontational</u> and <u>members should be alert that they can escalate to violence very quickly</u>. De-escalation techniques should be used when appropriate.
>
> (b) <u>Members should not dismiss alleged or observed criminal violations</u> as a civil matter and should initiate the appropriate investigation and report when criminal activity is apparent.
>
> (c) Members shall not provide legal advice, however, when appropriate, members should inform the parties when they are at risk of violating criminal laws.
>
> (d) Members are reminded that they shall not enter a residence or other non-public location without legal authority including valid consent.
>
> (e) Members should not take an unreasonable amount of time assisting in these matters and generally should contact a supervisor if it appears that peacekeeping efforts longer than 30 minutes are warranted."[7]

30.     Section 430.4.1 Sidney PD Policy Manual, Policy 430, which pertains to standby requests for property retrieval, provides in part: "Officers responding to a call for standby assistance to retrieve property should meet the person requesting assistance at a neutral location to discuss the process. The person should be advised that items that are disputed will not be allowed to be removed. The member may advise the person to seek private legal advice as to the

---

[7] Emphasis added.

distribution of disputed property. Members should accompany the person to the location of the property. Members should ask if the other party will allow removal of the property or whether the other party would remove the property. <u>If the other party is uncooperative, the person requesting standby assistance should be instructed to seek private legal advice and obtain a court order to obtain the items. Officers should not order the other party to allow entry or the removal of any items.</u>"[8]

31.     With respect to real property, Section 430.6 Sidney PD Policy Manual, Policy 430, provides: "Disputes over possession or occupancy of real property (e.g., land, homes, apartments) should generally be handled through a person seeking a court order."

### Disregarded Policies, Violence, and Threats Against Brianna Wilson Culminating Her Tragic, Avoidable and Preventable Death

32.     At the time of her death, Brianna resided at 630 Fourth Ave., Sidney, County of Shelby, Ohio 45365.

33.     Brianna's cousin, Defendant Riley D. Barger claimed to be living with Brianna at 630 Fourth Ave., Sidney, Ohio 45365 at the time of Brianna's death.

34.     Defendant Barger had been temporarily residing as a guest with Brianna at 630 Fourth Ave., Sidney, Ohio 45365 because Defendant Barger had quit his job and was evicted from his apartment.

35.     Defendant Barger's stay with Brianna was not to exceed a few days; however, Defendant Barger refused to leave and his stay ultimately last for more than a month.

36.     Defendant Barger met a homeless woman, Amber Lobdell, on the internet and attempted to move her into Brianna's home; however, Brianna did not want Defendant Barger to move Ms. Lobdell into Brianna's home and informed him of such.

---

[8] Emphasis added.

37.     While Brianna was at work, Defendant Barger snuck Ms. Lobdell into Brianna's home and posted pictures of him and Ms. Lobdell in Brianna's home on Facebook.

38.     Brianna learned of Defendant Barger allowing Ms. Lobdell into her home and immediately requested that Defendant Barger vacate her home.

39.     Defendant Barger vacated Brianna's home and proceeded to stay in a motel with Ms. Lobdell.

40.     On or about February 5, 2021, while Defendant Barger and Ms. Lobdell were at the motel, Brianna packed up the remainder of Defendant Barger's belongings in a box and placed the box outside of her home.

41.     At no point during Defendant Barger's stay with Brianna did Defendant Barger pay any rent to either Brianna or the property owner and Brianna's grandfather, David Pulfer, for staying at 630 Fourth Ave., Sidney, Ohio 45365.

42.     At no point during Defendant's Barger's stay with Brianna did Defendant Barger have a written lease agreement with Brianna or Mr. Pulfer to reside at 630 Fourth Ave., Sidney, Ohio 45365 as a tenant.

43.     At no point during Defendant's Barger's stay with Brianna did Defendant Barger contribute towards any utilities or other bills for 630 Fourth Ave., Sidney, Ohio 45365 or place any utilities for 630 Fourth Ave., Sidney, Ohio 45365 in his name.

44.     At no point during Defendant's Barger's stay with Brianna did Defendant Barger forward his mail to or receive any mail at 630 Fourth Ave., Sidney, Ohio 45365.

45.     By February 5, 2021, Defendant Barger no longer had permission to be on the property located at 630 Fourth Ave., Sidney, Ohio 45365 from either Brianna or Mr. Pulfer.

46.     Nevertheless, at approximately 12:57 p.m. on February 5, 2021, Defendant Barger called SPD and claimed that Brianna would not allow him to enter her home at 630 Fourth Ave., Sidney, Ohio 45365.

47.     At approximately 1:03 p.m., Defendant Jennings and Defendant White arrived at 630 Fourth Ave., Sidney, Ohio 45365 for a "civil issue" call.

48.     Upon arrival, Defendant Jennings made contact with Brianna, who explained that she did not call for service but that Defendant Barger and Ms. Lobdell called SPD.

49.     Defendant Jennings then spoke with Defendant Barger who alleged that he lived at 630 Fourth Ave., Sidney, Ohio 45365 and that Brianna moved his belongings outside of the home, despite Defendant Barger previously vacating the property to reside in a nearby motel.

50.     Brianna then informed Defendant Jennings and Defendant White that Defendant Barger was only supposed to be staying at 630 Fourth Ave., Sidney, Ohio 45365 for a few days and that Defendant Barger did not have a key to the residence.

51.     Brianna explained to Defendant Jennings and Defendant White that she was not allowing Defendant Barger to stay with her at 630 Fourth Ave., Sidney, Ohio 45365 for any longer.

52.     Defendant Jennings did not ask Defendant Barger to provide any proof of residence.

53.     Defendant White did not ask Defendant Barger to provide any proof of residence.

54.     Both Defendant Jennings and Defendant White told Brianna that she would need to file a formal eviction complaint through the court to have Defendant Barger evicted from 630 Fourth Ave., Sidney, Ohio 45365.

55.     Brianna informed Defendant Jennings and Defendant White that Defendant Barger would not be allowed back into the home at 630 Fourth Ave., Sidney, Ohio 45365.

56.     Brianna told Defendant Jennings and Defendant White that they could arrest her but that she would still not allow Defendant Barger back into the home at 630 Fourth Ave., Sidney, Ohio 45365.

57.     In response, Defendant Jennings told Brianna and Defendant Barger that Defendant Barger "could make entry into the home by any reason he wished" and that Defendant Barger "was allowed to gain entry anyway he needed to, even breaking a window."

58.     Brianna then invited Defendant Jennings and Defendant White into the home at 630 Fourth Ave., Sidney, Ohio 45365 to take photos of the couch inside the home, as Defendant Barger claimed Brianna had damaged the couch.

59.     Defendant Jennings and Defendant White declined to photograph the couch.

60.     Instead, Defendant Jennings and Defendant White informed Defendant Barger that he could enter the home and move his belongings back inside.

61.     Brianna informed Defendant Jennings and Defendant White that Defendant Barger was "abusing her like her ex."

62.     In addition, Brianna informed Defendants Jennings and White that Defendant Barger lied to Brianna regarding the reason for his initial stay at 630 Fourth Ave., Sidney, Ohio 45365.

63.     Defendant Jennings and Defendant White repeatedly stated that Brianna would need to have Defendant Barger evicted and that they could not prevent Defendant Barger from gaining access to the residence.

64.     At approximately 1:11 p.m., both Defendant Jennings and Defendant White returned to their vehicles, and Defendant White proceeded to clear the scene while Defendant Jennings began saving the body cam footage from the incident.

65.     After Defendant Jennings and Defendant White returned to their vehicles, Defendant Barger repeatedly attempts to enter Brianna's home at 630 Fourth Ave., Sidney, Ohio 45365.

66.     Brianna entered the home, closing the door behind her.

67.     Defendant Barger then reached into his box of belongings and placed an item in his pocket, potentially the knife he later used to stab Brianna to death.

68.     At approximately 1:12 p.m., Brianna called her father, Plaintiff Douglas Wilson, and informed him that Defendant Jennings and Defendant White were allowing Defendant Barger to break into her home and asked Plaintiff to come and help her.

69.     Defendant Jennings then heard "banging" and stated that Defendant Barger approached Defendant Jennings, but then returned towards the front of the house out of view.

70.     Defendant Jennings then exited his vehicle and approached the front of the home observed Brianna and Defendant Barger in a "confrontation" by the front window of 630 Fourth Ave., Sidney, Ohio 45365.

71.     Defendant White observed Defendant Jennings exiting his vehicle and proceeded to return to 630 Fourth Ave., Sidney, Ohio 45365.

72.     Defendant Jennings observed Defendant Barger by the window and that Brianna stepped in between Defendant Barger and the window.

73.     Defendant Jennings observed that Brianna had pushed Defendant Barger away from the window and that the window was damaged off its tracks.

74.     Defendant Jennings observed that Defendant Barger had fallen off of the porch after Brianna had pushed Defendant Barger away from the window.

75. Defendant White exited his vehicle and observed Defendant Barger falling off the porch.

76. At approximately 1:15 p.m., Brianna called her uncle, Darrin Opphile, and told him that Defendant Jennings and Defendant White were allowing Defendant Barger to break into her home and asked Mr. Opphile to come and help her.

77. Defendant Jennings observed Defendant Barger stepping back onto the porch and arguing with Brianna regarding the cost of the repair of the window.

78. Defendant White observed Defendant Barger stepping back onto the porch while Defendant Jennings was yelling at Brianna.

79. Defendant Jennings then observed Defendant Barger attempting to enter the home through the broken window and that Brianna attempted to block Defendant Barger from going through the window.

80. Defendant Jennings informed Brianna to step away from the window.

81. Brianna begged Defendant Jennings and Defendant White to take Defendant Barger away from her home; both Defendant Jennings and Defendant White refused to help Brianna.

82. Defendant Jennings and Defendant White observed a heated argument between Brianna and Defendant Barger; however, both Defendant Jennings and Defendant White refused to intervene or offer assistance.

83. Brianna then walked towards Defendant White while Defendant Jennings made contact with Defendant Barger.

84. Defendant Jennings told Defendant Barger to have his phone with him "if something happens."

85.    At approximately 1:16 p.m., Defendant Jennings and Defendant White decided to leave 630 Fourth Ave., Sidney, Ohio 45365 after Defendant Barger gained access to the home with the assistance of Defendant Jennings and Defendant White.

86.    At approximately 1:20 p.m., Mr. Opphile arrived at 630 Fourth Ave., Sidney, Ohio 45365 and discovered Brianna on the floor, face down, with blood stains on the carpet near the door where she tried to leave the home.

87.    With her last breaths, Brianna told Mr. Opphile that Defendant Barger had stabbed her and asked Mr. Opphile to help her as she could not breathe.

88.    At approximately 1:22 p.m., Mr. Opphile called 911 and began to administer CPR.

89.    After only a few seconds, Brianna passed away in her uncle's arms.

90.    Less than eight (8) minutes after Defendant Jennings and Defendant White left 630 Fourth Ave., Sidney, Ohio 45365, and Defendant Barger stabbed Brianna to death with a pocket knife.

91.    Defendant Jennings was dispatched to respond 630 Fourth Ave., Sidney, Ohio 45365 after Defendant Barger stabbed Brianna with a knife.

92.    Upon entering 630 Fourth Ave., Sidney, Ohio 45365, Defendant Jennings observed Brianna on the floor near the front door and administered CPR, unsuccessfully.

93.    Tragically, Brianna passed away as a result of the injuries she sustained when Defendant Barger stabbed her.

94.    Defendant White was also dispatched to respond 630 Fourth Ave., Sidney, Ohio 45365 after Defendant Barger stabbed Brianna with a knife.

95.    Upon his arrival, Defendant White observed Defendant Barger walking down the sidewalk.

96.     Defendant White stopped to speak with Defendant Barger, and discovered the knife used to kill Brianna in Defendant Barger's front pocket, after Defendant Barger told Defendant White that he had left the knife in the living room.

97.     Despite the initial call being for a civil issue, Defendant Jennings and Defendant White failed to follow SPD's Policy Manual, Policy 430.

98.     Despite the Policy Manual instructing officers to prevent criminal activity and maintain the peace, Defendant Jennings and Defendant White actually permitted Defendant Barger to make forcible entry into Brianna's home.

99.     In direct contradiction to Policy 430 of the Policy Manual, Defendant Jennings and Defendant White ordered that Brianna allow Defendant Barger into her home.

100.    In direct contradiction to Policy 430 of the Policy Manual, Defendant Jennings and Defendant White failed to implement any de-escalation techniques.

101.    In direct contradiction to Policy 430 of the Policy Manual, Defendant Jennings and Defendant White dismissed observed criminal violations when they allowed and watched Defendant Barger gain entry to Brianna's home by force.

102.    At no point did Defendant Jennings or Defendant White advise Defendant Barger to seek private legal advice.

103.    Instead, Defendant Jennings and Defendant White improperly informed Defendant Barger that he had a legal right to break into Brianna's home.

104.    Despite Brianna telling Defendant Jennings and Defendant White that Defendant Barger no longer lived there, neither Defendant Jennings nor Defendant White asked Defendant Barger to produce proof of his residence.

105. Despite observing a physical and heated verbal altercation between Brianna and Defendant Barger, neither Defendant Jennings nor Defendant White asked Brianna or Defendant Barger if either had a weapon.

106. Despite observing a physical and heated verbal altercation between Brianna and Defendant Barger, neither Defendant Jennings nor Defendant White conducted a search for weapons on either Brianna or Defendant Barger.

107. Despite observing a physical and heated verbal altercation between Brianna and Defendant Barger, neither Defendant Jennings nor Defendant White offered any sort of medical attention to Brianna or Defendant Barger.

108. Despite observing a physical and heated verbal altercation between Brianna and Defendant Barger, neither Defendant Jennings nor Defendant White arrested either Brianna or Defendant Barger for domestic violence.

109. Despite choosing not to arrest either Brianna or Defendant Barger for domestic violence or related misconduct, both Defendant Jennings and Defendant White failed to adhere to Policy 311 of SPD's Policy Manual.

110. Neither Defendant Jennings nor Defendant White advised Brianna or Defendant Barger of voluntary separation.

111. Neither Defendant Jennings nor Defendant White provided Brianna or Defendant Barger with appropriate resource referrals.

112. Neither Defendant Jennings nor Defendant White documented any sort of resolution between Brianna and Defendant Barger, as Defendant Jennings and Defendant White chose to leave 630 Fourth Ave., Sidney, Ohio 45365 prior to any resolution being met.

113. Neither Defendant Jennings nor Defendant White contacted a supervising officer for approval to not arrest Brianna or Defendant Barger.

114. Neither Defendant Jennings nor Defendant White documented or clearly articulated their reasons for not arresting either Brianna or Defendant Barger.

115. Neither Defendant Jennings nor Defendant White asked whether Brianna was safe.

116. Instead, Defendant Jennings and Defendant White blamed Brianna for Defendant Barger's misconduct.

117. Instead, Defendant Jennings and Defendant White affirmatively assisted Defendant Barger in his misconduct, by helping Defendant Barger gain unlawful entry to Brianna's home.

118. The reckless actions and inactions of Defendant Jennings and Defendant White led to the preventable and tragic death of Brianna.

119. Furthermore, SPD has repeatedly failed to render services to Brianna with respect to calls for domestic violence.

120. Around winter of 2018 and spring of 2019, Brianna placed multiple calls for service to SPD regarding an individual named Robert Parker.

121. Brianna alleged that Mr. Parker was stalking and harassing her, to the extent that a temporary protection order was issued against Mr. Parker.

122. Around July and August of 2019, Brianna called SPD for service when Mr. Parker stole Brianna's vehicle.

123. Around May and June of 2020, Brianna called SPD for service when Brianna discovered that her tires had been slashed.

124. Around August and September of 2020, Brianna called SPD for service when Mr. Parker assaulted her.

125.    Around September and October of 2020, Brianna called SPD for service when Brianna discovered that her tires had been slashed again, and that her gas tank had been tampered with.

126.    Around November of 2020, Brianna called SPD for service when Brianna discovered that Mr. Parker had thrown a rock through the window at 630 Fourth Ave., Sidney, Ohio 45365.

127.    Around November of 2020, Brianna called SPD for service when Brianna discovered that an associate of Mr. Parker, Skyler Williamson, had thrown a rock to disable Brianna's surveillance cameras at 630 Fourth Ave., Sidney, Ohio 45365.

128.    On or about November 28, 2020, Plaintiff, Doug Wilson, and Brianna called SPD for service when they observed that Mr. Parker was stalking and harassing Brianna at 630 Fourth Ave., Sidney, Ohio 45365.

129.    SPD responded to Plaintiff's and Brianna's calls for service and met with Mr. Parker.

130.    Despite the clear history of stalking and harassing of Brianna by Mr. Parker, SPD did not arrest Mr. Parker, nor did they provide Brianna with any resources or services as a victim of domestic violence.

131.    As a result of SPD's failure to follow its own policies and procedures in response to Plaintiff's and Brianna's call for service on or about November 28, 2020, Mr. Parker continued to harass both Brianna and her half-brother, Clayton Crowell, via text messages and/or other forms of electronic communications.

132.    As a result of SPD's failure to follow its own policies and procedures in response to Plaintiff's and Brianna's call for service on or about November 28, 2020, Brianna ultimately

had to defend herself against Mr. Parker by shooting him on November 29, 2020 at Mr. Crowell's

residence, located at 315 E. South Street, Sidney, OH 45365.

133.    Despite Brianna's persistent calls for service with SPD, Brianna was charged with

felonious assault against her abuser, Mr. Parker.

134.    Brianna was never convicted of this charge, as Defendant Barger stabbed Brianna

before her case could proceed to trial.

135.    SPD was aware that Brianna was a victim of domestic violence from 2018 until

February 5, 2021.

136.    Nevertheless, SPD and Defendants ignored Brianna's cries for help, resulting in

Brianna's  preventable and tragic death of Brianna.

## FIRST CAUSE OF ACTION
### (Municipal Liability Under 42 U.S.C. § 1983 and the Fourth Amendment against Defendant City, Defendant Balling, Defendant Jennings, and Defendant White)

137.    Plaintiff incorporates all foregoing paragraphs of this Complaint by reference as if

fully rewritten herein.

138.    At all relevant times mentioned herein, Defendant City and Defendant Balling

employed Defendant Jennings and Defendant White as police officers with SPD.  Defendant City

and Defendant Balling provided Defendant Jennings and Defendant White, as well as other SPD

officers, with official badges, identification, and uniforms, which designated and described them

as City of Sidney and SDP employees.

139.    At all relevant times, including February of 2021, and for years prior thereto, the

Defendant City and Defendant Balling, as the final policymaker for SPD, knowingly, recklessly,

wantonly, and/or with a callous indifference to the constitutional rights of the citizens of Sidney,

permitted and/or maintained a widespread "custom" of allowing an historical pattern of affirmative disregard of domestic abuse and related arrest policies.

140.    Pursuant to Sidney PD Policy Manual, Section 103.3, "[t]he Chief of Police shall be considered the ultimate authority for the content and adoption of the provisions of this manual and shall ensure compliance with all applicable federal, state and local laws. The Chief of Police or the authorized designee is authorized to issue Special Orders, which shall modify those provisions of the manual to which they pertain. Special Orders shall remain in effect until such time as they may be permanently incorporated into the manual." *See Sidney PD Policy Manual, Policy 103 attached hereto as Exhibit 4.*

141.    Defendant City, through its final policymaker, specifically Defendant Balling, did not take seriously civil issues or domestic violence, and such disregard is evident in how they handle instances of domestic violence and other criminal activity, even when directly observed by SPD employees and/or officers.

142.    Upon information and/or belief, Defendant City and its final policymaker, specifically Defendant Balling, permitted this custom by:

    a    Treating civil issues and domestic violence victims less favorably than other calls for service;

    b    Allowing officers to omit crucial and statutorily required information and indicia from reports which results in underreporting and underserving civil issues and domestic violence victims;

    c    Failing to arrest or timely arrest suspects accused of domestic violence or other serious offenses against women;

    d    Affirmatively allowing criminal activity to occur;

e      Failing to follow policy, including the civil issue and domestic dispute policies;

f      Failing to perform SPD protocols as trained; and

g      Allowing violation of SPD policies.

143.    This pattern of police misconduct was so pervasive as to constitute a "custom or usage" with the force of law.

144.    Based upon the principles set forth in *Monell v. New York City Department of Social Services,* 436 U.S. 658 (1978), Defendant City and Defendant Balling are liable for the death of Brianna and all injuries sustained by her next of kin as set forth herein.

145.    The policies, practices and/or customs of SPD were the moving force behind the failures to act which ultimately resulted in the death of Decedent Brianna Wilson.

146.    Despite the facts and circumstances surrounding the death of Brianna, which clearly demonstrate the failure of Defendant Jennings and Defendant White, to properly investigate and act upon the danger posed to Brianna by Defendant Barger, upon information and belief, Defendant City and Defendant Balling have failed to meaningfully investigate or impose any discipline on Defendant Jennings and Defendant White, and thereby ratified the actions of these Defendants.

147.    Additionally, Defendant City, through SPD, under the control and leadership of Defendant Balling, maintained or permitted one or more of the following official policies, customs, or practices which included, *inter alia,* deliberate indifference to the constitutional rights of persons, such as Brianna:

a.    Failure to provide adequate training and supervision to police officers with respect to civil issues and domestic violence calls/complaints;

b.    Failure to adequately discipline or retrain officers involved in misconduct;

c.   Selection, retention, and assignation of officers with demonstrable propensities for apathy with regard to civil issues and domestic violence victims/complaints, dishonesty, and other misconduct;

d.   Ratification by the highest levels of authority of the specific unconstitutional acts alleged in this complaint;

e.   Law Enforcement Code of Silence; and/or

f.   Failure to properly and meaningfully investigate civil issues and complaints of domestic violence.

148.   These policies, practices, actions, and customs were the moving force behind, *inter alia*, the eventual death of Brianna, and together were the direct and proximate cause of the unconstitutional acts and deprivation of the rights, privileges and immunities secured to Brianna by the Fourth and Fourteenth Amendments to the United States Constitution, including due process, and laws enacted thereunder committed in this case and the injuries and death sustained by Brianna and her next of kin.

149.   As a result of the customs described above, Brianna was subjected to personal injuries, great pain, death and other damages, and as a result, Defendant City, through Defendant Balling as the final policymaker, is liable to Plaintiff, on behalf of Brianna, in damages under 42 USC § 1983, including pain and suffering and other damages.

## SECOND CAUSE OF ACTION
### (42 U.S.C. § 1983 Municipal Liability for Violation of Equal Protection Clause against Defendant City and Defendant Balling)

150.   Plaintiff incorporates all foregoing paragraphs as if fully rewritten herein.

151.   Decedent Brianna Wilson was a woman and was therefore a member of a protected class.

152.     The Equal Protection Clause of the Fourteenth Amendment requires that all persons similarly situated be treated alike.  Therefore, Brianna, as a female victim of domestic violence, had a right to be treated similarly to male victims of domestic violence.

153.     Defendant City and Defendant Balling discriminated against Brianna on the basis of her gender by failing to provide the same public services and attention as they do to male victims of domestic violence.

154.     On or about February 5, 2021, Defendant City and Defendant Balling intentionally and/or recklessly acted in an extreme and outrageous manner by intentionally discriminating against Brianna by refusing to provide the same public services and attention as they do to male victims of domestic violence.

155.     Defendant City's and Defendant Balling's conduct towards Brianna proximately caused Brianna's death.

156.     Brianna's injuries were serious and of a nature that no reasonable person could be expected to endure it.

157.     As a direct and proximate result of Defendant City's and Defendant Balling's conduct, as set forth in this claim, Brianna suffered death.

**THIRD CAUSE OF ACTION**
**(42 U.S.C. § 1983 Deprivation of Right to Equal Protection of the Laws against Defendant City, Defendant Balling, Defendant Jennings, and Defendant White)**

158.     Plaintiff incorporates all foregoing paragraphs as if fully rewritten herein.

159.     Decedent Brianna Wilson was a victim of domestic violence and therefore was a member of a protected class.  "Courts in the Sixth Circuit have recognized as valid equal protection claims by victims of domestic violence."  *Stevens v. Trumbull County Sheriffs' Dep't.*, 63 F.Supp.2d 851, *856 (N.D. Ohio Sept. 1, 1999); See also *Blanknship v. City of Cleveland*, 145

F.3d 1330 (6th Cir. 1998); *Hakken v. Washtenaw County*, 901 F.Supp 1245 (E.D. Mich. 1995); *Perrino v. City of Newton Falls*, 972 F.2d 348 (6th Cir. 1992).

160.    On or about February 5, 2021, Defendant City, Defendant Balling, Defendant Jennings, and Defendant White intentionally violated the constitutional right of Brianna by treating Brianna, a victim of domestic violence, differently than victims of non-domestic disputes.

161.    As a direct and proximate result of Defendant City's, Defendant Balling's, Defendant Jennings', and Defendant White's discrimination of Brianna, Brianna suffered severe injuries, including death.

162.    In carrying out the foregoing wrongful acts, Defendant City's, Defendant Balling's, Defendant Jennings', and Defendant White's conduct was motivated by evil motive or intent, and it involved reckless or callous indifference to the federally protected rights of others, thus justifying the award of punitive damages against these Defendants.

## **FOURTH CAUSE OF ACTION**
**(Violation of the Due Process of the Clause of the Fourteenth Amendment 42 U.S.C. § 1983 against Defendant Jennings and Defendant White)**

163.    Plaintiff incorporates all foregoing paragraphs as if fully rewritten herein.

164.    Generally, there is no constitutional right, either in the due process clause or the equal protection clause to be protected against being attacked by a member of the general public. Consequently, there is no corresponding duty placed on the State and its officers requiring them to act when members of the general public are in danger. However, there are two recognized exceptions to this general rule.

165.    The first is where the State has created a custodial or other special relationship with the victim. In those situations, the State and its officers have a duty, under the due process clause to provide those special individuals with protections. Here, there existed a special relationship

between Brianna born of the affirmative actions taken by SPD for civil issues and domestic violence cases.

166. SPD, Defendant Jennings, and Defendant White did more than give Brianna mere assurances of protections and safety. Rather, by their actions, they affirmatively undertook to protect Brianna and she relied upon that undertaking.

167. Moreover, the law recognizes instances where the state has increased the chance of danger for a citizen seeking its protection. This is called a "state-created danger" and it may form the basis for a special relationship. While the State generally does not shoulder an affirmative duty to protect its citizens from private acts of violence, under the state-created danger theory, the State may not cause or greatly increase the risk of harm to its citizens without due process of law through its own affirmative acts.

168. The acts Defendant Jennings and Defendant White increased the chance of danger for Brianna when she was seeking protection.

169. Defendant Jennings and Defendant White violated SPD's own policies and procedures related to civil issues and domestic violence by allowing Defendant Barger to gain forcible entry to Brianna's home and by prohibiting Brianna from preventing Defendant Barger from gaining access.

170. The acts of Defendant Jennings and Defendant White were unnecessary, objectively unreasonable and malicious. Therefore, Defendant Jennings and Defendant White are liable to Plaintiff, on behalf of Brianna, in damages pursuant to 42 U.S.C. § 1983, including compensatory damages, costs, attorney fees and punitive damages.

**FIFTH CAUSE OF ACTION**
**(Negligent Hiring, Training, Supervision, and Retention against Defendant City and Defendant Balling)**

171.    Plaintiff incorporates all foregoing paragraphs of this Complaint by reference as if fully rewritten herein.

172.    Defendant City and Defendant Balling had a duty to develop, promulgate and effectively enforce thorough and distinct regulations regarding the handling of civil issues and domestic violence calls and complaints by law enforcement.

173.    Defendant City and Defendant Balling were reckless, willful, wanton, malicious and/or did not act in good faith in that they failed to develop, promulgate and effectively enforce thorough and distinct regulations regarding the handling of civil issues and domestic violence calls and complaints by law enforcement personnel, thereby creating a serious danger to the citizens of Sidney, generally, and to Brianna, specifically.

174.    Defendant City and Defendant Balling had a duty to provide proper, adequate and ongoing training and supervision of Defendant Jennings and Defendant White, specifically as to, but not limited to, the handling of civil issues and domestic violence calls and complaints.

175.    As the direct and proximate result of the aforesaid recklessness of Defendant City and Defendant Balling, Brianna was left in a dangerous situation and was ultimately stabbed to death.

**SIXTH CAUSE OF ACTION**
**(Wrongful Death against Defendant Jennings and Defendant White)**

176.    Plaintiff incorporates all foregoing paragraphs of this Complaint by reference as if fully rewritten herein.

32

177. At all relevant times, Defendant Jennings and Defendant White owed Decedent Brianna Wilson a duty to exercise ordinary care and protect, including a duty to exercise reasonable care, reasonable and prudent under the circumstances.

178. The Officer Defendants, Defendant Jennings, and Defendant White breached their duty of care owed to Brianna when Defendants Jennings and White failed to adhere to SPD's policies and procedures, resulting in Defendant Barger using deadly force by stabbing Brianna with a knife.

179. The Officer Defendants, Defendant Jennings, and Defendant White breached their duty of care owed to Brianna when Defendants Jennings and White assisted Defendant Barger in gaining access to Brianna's home.

180. The Officer Defendants, Defendant Jennings, and Defendant White breached their duty of care owed to Brianna when Defendants Jennings and White permitted Defendant Barger to engage in criminal conduct when gaining access to Brianna's home.

181. The Officer Defendants, Defendant Jennings, and Defendant White breached their duty of care owed to Brianna when Defendants Jennings and White prohibited Brianna from preventing Defendant Barger in gaining access to Brianna's home.

182. The Officer Defendants, Defendant Jennings, and Defendant White breached their duty of care owed to Brianna when Defendants Jennings and White cleared the scene prior to Brianna and Defendant Barger reaching a resolution.

183. The Officer Defendants, Defendant Jennings, and Defendant White breached their duty of care owed to Brianna when Defendants Jennings and White failed to make an arrest for domestic violence after observing a physical altercation.

184.    The Officer Defendants, Defendant Jennings, and Defendant White breached their duty of care owed to Brianna when Defendants Jennings and White failed to protect Brianna as a victim of domestic violence.

185.    Brianna's injuries and resultant death were caused by the reckless, willful, wanton, and/or malicious tortious conduct and wrongdoing of Defendant Jennings and Defendant White, without any negligence or contribution on the part of Brianna.

186.    Furthermore, Brianna's injuries and resultant death were caused by the failure of Defendant Jennings and Defendant White to act in good faith, without any negligence or contribution on the part of Brianna.

187.    As the direct and proximate result of Defendant Jennings' and Defendant White's reckless, willful, wanton, and/or malicious tortious conduct and wrongdoing, and as a direct and proximate result of  Defendant Jennings' and Defendant White's failure to act in good faith, Brianna sustained serious injuries that resulted in death.

188.    As the direct and proximate result of Defendant Jennings' and Defendant White's reckless, willful, wanton, and/or malicious tortious conduct and wrongdoing, and as a direct and proximate result of  Defendant Jennings' and Defendant White's failure to act in good faith, Plaintiff suffered the death of his daughter, and experienced severe emotional distress due to Brianna's death.

189.    As the direct and proximate result of Defendant Jennings' and Defendant White's reckless, willful, wanton, and/or malicious tortious conduct and wrongdoing, and as a direct and proximate result of  Defendant Jennings' and Defendant White's failure to act in good faith, that resulted in Brianna's death, Plaintiff and next of kin, have been deprived of love, care, affection,

companionship, support, financial support and other benefits and pleasures of the family relationship.

190.    As the direct and proximate result of Defendant Jennings' and Defendant White's reckless, willful, wanton, and/or malicious tortious conduct and wrongdoing, and as a direct and proximate result of Defendant Jennings' and Defendant White's failure to act in good faith, that resulted in Brianna's death, Plaintiff and next of kin have incurred funeral expenses, medical and other healthcare-related expenses, the lost income, lost profits, and/or lost earning capacity.

191.    Brianna is survived by her heirs. Brianna's heirs have suffered and will continue to suffer, *inter alia,* pecuniary loss, loss of their aide, comfort, consortium, society, companionship, guidance and protection, as well the grief and sorrow from the loss of the love and affection of and for their loved ones, and otherwise suffered damages to their detriment.

192.    Defendant Jennings' and Defendant White's failure to either remove Defendant Barger or relocate Brianna was in violation of accepted standards as they pertain to civil issues and domestic violence investigations, Ohio law, and SPD's own policies.

193.    Defendant Jennings and Defendant White were negligently trained in civil issues and domestic violence investigations which ultimately led to and contributed to Defendant Jennings' and White's reckless, willful, wanton, and/or malicious tortious conduct and wrongdoing in leaving Brianna to fend for herself before being stabbed and killed by Defendant Barger.

194.    Defendant Jennings and Defendant White acted recklessly, willfully, wantonly, maliciously, and/or not in good faith in committing the acts alleged in this Complaint, which resulted in the injuries and wrongful death of Brianna and her next of kin.

195.    As a direct and proximate result of the actions and inactions of Defendant Jennings and Defendant White in this Complaint, Brianna was killed, subjecting Defendant Jennings and Defendant White to liability pursuant to R.C. 2125.02.

## SEVENTH CAUSE OF ACTION
### (Wrongful Death against Defendant Barger)

196.    Plaintiff incorporates all foregoing paragraphs of this Complaint by reference as if fully rewritten herein.

197.    Brianna is survived by her heirs.  Brianna's heirs have suffered and will continue to suffer, *inter alia,* pecuniary loss, loss of their aide, comfort, consortium, society, companionship, guidance and protection, as well the grief and sorrow from the loss of the love and affection of and for their loved ones, and otherwise suffered damages to their detriment.

198.    Defendant Barger's intentional, reckless, willful, wanton, malicious, and/or negligent tortious conduct and wrongdoing caused the death of Decedent Brianna Wilson.

199.    Defendant Barger stabbed Brianna, resulting in her fatal injuries and causing her death.

200.    As a direct and proximate result of the actions Defendant Barger in this Complaint, Brianna was killed, subjecting Defendant Barger to liability pursuant to R.C. 2125.02.

201.    As a consequence of Brianna's death, Plaintiff and next of kin suffered pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced and reasonably probable to be experienced for the rest of their lives.

202.    As a further consequence of Brianna's death caused by Defendant Barger, Plaintiff and next of kin incurred expenses for funeral and burial, medical care and services for the injury that resulted in death, lost wages, loss of earning capacity, and counseling for Plaintiff and next of kin.

203.    As a further consequence of Brianna's death caused by Defendant Barger, Plaintiff has incurred the loss of love, affection, companionship, care, protection, and guidance since the death and in the future.

## EIGHTH CAUSE OF ACTION
### (Survivorship Action against Defendant Jennings and Defendant White)

204.    Plaintiff repeats and realleges the above allegations as if fully set forth herein.

205.    Plaintiff further claims that as a direct and proximate result of the reckless, willful, wanton, and/or malicious tortious conduct and wrongdoing of Defendant Jennings and Defendant White as alleged herein, individually and/or jointly, Brianna was caused to suffer mental anguish and conscious physical pain and suffering prior to her death, for which compensation is sought.

206.    Defendant Jennings and Defendant White owed Brianna a duty of care, they breached that duty, and their breach of duty was the proximate cause of Brianna's death.

207.    Plaintiff brings this survivorship action pursuant to R.C. 2305.21.

## NINTH CAUSE OF ACTION
### (Survivorship Action against Defendant Barger)

208.    Plaintiff repeats and realleges the above allegations as if fully set forth herein.

209.    Plaintiff further claims that as a direct and proximate result of the intentional, reckless, willful, wanton, malicious, and/or negligent tortious conduct and wrongdoing of Defendant Barger, as alleged herein, Brianna was caused to suffer mental anguish and conscious physical pain and suffering prior to her death, for which compensation is sought.

210.    Defendant Barger owed Brianna a duty of care, he breached that duty, and his breach of duty was the proximate cause of Brianna's death.

211.    Plaintiff brings this survivorship action pursuant to R.C. 2305.21.

## TENTH CAUSE OF ACTION
### (Violations of Criminal Statutes and Right to Civil Recovery for Criminal Violation Under R.C. 2307.60 against Defendant Jennings and Defendant White)

212.    Plaintiff incorporates all foregoing paragraphs as if fully rewritten herein.

213.    Defendant Jennings and Defendant White, individually, jointly, and severally, as their duties appear for each, have violated criminal statutes which proximately resulted in injuries, damages, and death of Brianna.

214.    R.C. 2921.44(E) provides that "[n]o public servant shall recklessly fail to perform a duty expressly imposed by law with respect to the public servant's office, or recklessly do any act expressly forbidden by law with respect to the public servant's office."

215.    R.C. 2921.44(F) provides that "[w]hoever violates this section is guilty of dereliction of duty, a misdemeanor of the second degree."

216.    R.C. 2307.60(A)(1) provides that "[a]nyone injured in person or property by a criminal act has, and may recover full damages in a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or under the common law of this state and may recover punitive or exemplary damages if authorized by Section 2315.21 or another section of the Revised Code."

217.    The Ohio Supreme Court has interpreted this provision to independently authorize a civil action for damages caused by criminal acts, unless otherwise prohibited by law. See *Jacobson v. Kaforey*, 2016-Ohio-8434, Sec. 12 ("The decision to create a civil cause of action for any person injured by a criminal act has been definitively made by the General Assembly").

218.    As alleged throughout this complaint, Defendant Jennings and Defendant White recklessly, wantonly, willfully, intentionally, maliciously, and not in good faith failed to perform their duties despite sufficient cause and reason.

219.    Accordingly, because Defendant Jennings' and Defendant White's intentional, reckless, wanton, willful, malicious misconduct and their failure to perform their duties in good faith is a crime under R.C. 2921.44(F), Plaintiff is entitled to bring a civil action to recover full damages cause by Defendant Jennings' and Defendant White's criminal acts.

## ELEVENTH CAUSE OF ACTION
### (Violations of Criminal Statutes and Right to Civil Recovery for Criminal Violation Under R.C. 2307.60 against Defendant Barger)

220.    Plaintiff incorporates all foregoing paragraphs as if fully rewritten herein.

221.    Defendant Barger has violated criminal statutes which proximately resulted in injuries, damages, and death of Brianna.

222.    R.C. 2903.05(A) provides that "[n]o person shall negligently cause the death of another or the unlawful termination of another's pregnancy by means of a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code."

223.    R.C. 2903.041(A) provides that "[n]o person shall recklessly cause the death of another or the unlawful termination of another's pregnancy."

224.    R.C. 2903.04(A) provides that "[n]o person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony."

225.    R.C. 2903.04(B) provides that "[n]o person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a misdemeanor of any degree, a regulatory offense, or a minor misdemeanor

other than a violation of any section contained in Title XLV of the Revised Code that is a minor misdemeanor and other than a violation of an ordinance of a municipal corporation that, regardless of the penalty set by ordinance for the violation, is substantially equivalent to any section contained in Title XLV of the Revised Code that is a minor misdemeanor."

226.     R.C. 2903.03(A) provides that "[no] person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another or the unlawful termination of another's pregnancy."

227.     R.C. 2903.02(A) provides that "[no] person shall purposely cause the death of another or the unlawful termination of another's pregnancy."

228.     R.C. 2903.02(B) provides that "[no] person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code.

229.     As alleged throughout this complaint, Defendant Barger recklessly, wantonly, willfully, intentionally, maliciously, and/or negligently killed Brianna Wilson by stabbing Brianna with a knife.

230.     As alleged throughout this complaint, Defendant Barger recklessly, wantonly, willfully, intentionally, maliciously, and/or negligently killed Brianna Wilson while breaking into her home at 630 Fourth Ave., City of Sidney, County of Shelby, Ohio 45365.

231.     Accordingly, because Defendant Barger's intentional, reckless, wanton, willful, malicious, and/or negligent misconduct is a crime under R.C. 2903.05(A), R.C. 2903.041(A), R.C. 2903.04(A), R.C. 2903.04(B), R.C. 2903.03(A), R.C. 2903.02(A), and/or R.C. 2903.02(B),

Plaintiff is entitled to bring a civil action to recover full damages cause by Defendant Barger's criminal acts.

## FOURTEENTH CAUSE OF ACTION
### (Claim for Attorney's Fees)

232.    Plaintiff is entitled to recover attorney's fees and costs pursuant to 42 U.S.C. § 1988. Plaintiff therefore requests that the Court and jury award his attorney's fees and expenses.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Douglas Wilson, as Administrator of the Estate of Brianna Taylor Wilson, aka Brianna T. Wilson, deceased, prays for judgment against each Defendant, jointly and severally, in an amount in excess of $75,000 in compensatory damages; in excess of $75,000 in punitive damages on each cause of action in this Complaint; as well as any other appropriate relief, including attorney's fees and litigation expenses, the costs of this action, statutory damages, pre and post judgment interest, and any other legal, equitable, injunctive, statutory, or declaratory relief that may be just and appropriate upon a full hearing.

Respectfully submitted,

/s/ Briana C. Breault
Briana C. Breault (#0099773)
Jon Paul Rion (#0067020)
RION, RION & RION, L.P.A., Inc.
130 W. Second Street, Suite 2150
Dayton, Ohio 45402
(937) 223-9133 (telephone)
(937) 223-7540 (facsimile)
info@rionlaw.com
*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff demands a trial by jury on all issues presented herein.

 /s/ Briana C. Breault                    
Briana C. Breault (#0099773)